1130-60, Mary Ann Kurtz v. 630 N. State Parkway Okay, counsel, if you could both approach. Tell us your name, sir, and who you represent. Seymour Kurtz, representing the deflated apple lawn here, Your Honor. James Davidson, representing the apple leaves. They are Andrea Reichsecker, Daryl Hubbard, and Subler & Company. We try to maintain 15 minutes per side, but as you can see, we're not really good at it. But that's our general rule, 15 minutes per side. Save some time for rebuttal, sir, and we'll try to get to all your arguments. Thank you very much. Your Honors, we filed the action on behalf of the plaintiff who was realized wrongfully discussed, trivialized, and defamed under two remaining counts. There were six counts altogether. The first count, my colleague correctly weighed our count. It was a count based upon the lawsuit itself, which is recognized immune from any cause of action. And then there were five other counts. Three I saw as debatable. These two remaining I didn't see being debatable. These are the grant of immunity by the lower court for the wrongful or free allegations we deem wrongful based upon privilege to do so. We think there was none. And so that's basically it, Your Honors. Let me ask you a couple factual questions because it's not entirely clear from the record what happened here. At some point in time, was the plaintiff in arrears to the amount of $15,000, at some point in time? At some point in time, the plaintiff was in arrears at the most $10,000, never $15,000. Was this rent or was this for common elements or? For the association's monthly assessments. So it's not for the – it's for the common elements? Yes, Your Honor. Yes. Okay. So they didn't pay that for a long period of time? That's correct. There was some peripheral disputes and it didn't work out. And the plaintiff could not force a settlement on the other disputes until later on. And the amount of money that was claimed by one of the attorneys here, Mr. Kapuska, was accurate. It was $10,000 due in October of 2008. For how long, roughly, had there been a significant amount due? Months, Your Honor, maybe six, seven months. Okay. And they filed a suit, and then sometime after the suit was filed, but before the lien was filed, did the $10,000 get paid? Actually, 12 or 13,000 was paid on the 1st of December of 2008. The lawsuit was filed on the 29th of December. The lien was recorded on the 15th of January. By the time the lawsuit was filed, long before that, actually, the check was paid on the 1st of December 2008. It would clear the account of the association on the 5th of December 2008. And at that point, it also was a result of negotiation with Mr. Kogan or Kagan, one of the partners in the law firm, and myself. Okay. So in terms of periods of time that we're dealing with, there was a period of time of approximately two months or something like that when a sum of $10,000 or so was due in owing. And then there was a period of time that this lawsuit was on file that the money was not due in owing. It had already been paid. I stopped the pleading, Your Honor. The fact is that we decided to, the plaintiff decided to remove all matters of litigation or concern, and I asked Mr. Kogan, maybe not clear in the pleadings, to say, okay, is whatever you want, tell me, and we'll pay it, which he did. He gave a figure, which he first checked with the association, verified the figure he had, and we gave him all the money he asked for on the 1st of December 2008. And from then on, we had no idea a problem existed. Unknown to us, on the 29th of December, the plaintiff filed, excuse me, the then plaintiff in our case filed her lawsuit for $15,000 and eviction and what have you, attorney's fees. And then two weeks later, the same party filed or recorded their lien against the title of their property. What are your damages? Well, in fact, what happened, Your Honor, the property was valued by a second mortgage holder, namely a bank downtown, I think it was Harris Bank, $1.5 million. Right. And there was the bank's appraisal. And we had mortgages totaling between $1 million and $1,100,000. We had an equity of $400,000 at that time. Well, they filed the suit and made it impossible to get any kind of financing because the circumstances changed. The market went down, the real estate market went down, property went down in value, and the availability of mortgage loans was diminished. There was one item of damages, and a significant one, a $400,000 difference right there, because right now the property is well underwater. It's not worth the $1,100,000. I guess, you know, in looking at the facts here, I can understand that there was, you know, something improper done if, indeed, the money was paid back and the lawsuit was filed and the lien was recorded even though it was paid. That I can understand. But what I'm trying to figure out is what was it about that conduct during that brief period of time that caused any damage to the plaintiff in this case? Had we not had that conduct, we could have easily refiled. We gave notice to the defendants that they should remove their lien and litigation. Which, by the way, they did have the courtesy of filing their own motion for dismissal of their complaint with prejudice six months later on the 3rd of June of 2009. So is the damage then – I'm sorry to interrupt – is the damage then that because of their wrongfully filing the lawsuit and the lien that the plaintiff was unable to refinance on her condo the $400,000 in equity? Exactly. The $100,000 in mortgages, probably worth an estimation of the bank, $500,000, and we couldn't get any kind of money at all, nothing close to it, in refinancing of the property after they filed the suit and made their allegations mistaken or wrongful. And then they filed their lien as well and made it impossible to get any financing. Was there any evidence that the plaintiff did, in fact, try to get credit or anything like that? No. Unfortunately, the plaintiff relied on my wisdom and there was no chance, in my opinion, of getting any kind of financing. All right. The issue remains whether there's an absolute privilege in the filing of a lien. That's the threshold issue. Whether you have damages is another issue for another day. And you're correct, Your Honor. We felt the court was in error when she gave immunity for the alleged wrongful statements made in the claim for a lien. And based on the fact that she believed at that time that in order to file the eviction suit, the forceful entry detainer suit, the then plaintiff was obliged to file a claim for a lien to justify the forceful entry suit. And that's completely in error. Her opinion was very well reasoned. This statement does appear to be in error. There's not a condition precedent. And that's why we waived all our other claims for appeal because the other ones were arguable. This one was clearly wrong and it came at the wrong time. I don't know if even earlier would have helped because when you were remarkably chastised by the bank that lent you a million, 100,000 in effects, you can't go anyplace else without showing a lot of resources. And in these days and in those days, the market just collapsed realistically. And there's no way in the world we could have gotten even one million, 100,000, let alone a million and a half for the... Your opponent cites us to the California case of Wilton v. Mountainwood Homeowners Association. Why should this court not adopt the reasoning and the policy advanced by that court? I have to apologize. I found an Illinois case on that subject and I've lost track of it. There is an Illinois case. I looked for it repeatedly in the last little while where they point out that California law has its own peculiarities and Illinois won't follow California law in these matters. But that's basically the argument. The California case is very close to this case. And if we have their statutes and their approaches to jurisdictions here, we might well go their way also. The fact is we don't. The extension of the privilege for the wrongful thing to say in a claim for lien by the protection afforded you by an unrelated lawsuit allows great leverage to people who may want to make wrongful defamatory claims and then file a lawsuit to embrace it. Let me, you know, going back to what the other Justice was pointing out in the timing, it appears to me you didn't say, you said you were negotiating, but it almost appears as though there was bad blood here, that it was like since you didn't do it our way, we're going to cause you problems. No. On the contrary, I trusted them and would still trust now the attorney I was negotiating with. Well, then why did they file a lien? After you said you were negotiating. I don't know why they filed the lawsuit. I don't know why they filed the lien. You have very sophisticated and very competent lawyers whose bread and butter is this kind of litigation. We paid the money in the first of the money which had nothing in writing from them other than the word of counsel. How much money? We would have taken everything, all penalties, all interest, attorney's fees, everything, from the $10,000 alleged against us in October to December 1st. And I prepaid the entire month of December as well on behalf of the plaintiffs. And we had no expectation of more trouble, more litigation or any liens at all. And we didn't find out about it until the first part of March. We never got notice from anybody until the first of March when I did ask a question of the management people, and they sent back a letter mentioning that there had been an eviction in force of all interest filed against us, which surprised me. I went to court, checked the court files, and sure enough found the case. We had no idea of that, but we thought we'd brought peace and quiet. And I don't know if it was a mistake or what their operation is. So the plaintiff was not served with summons? Never served with summons, Your Honor. They did go to the sheriff's office and apparently got leave of court and had a private process server who never served us either. And obviously we're not ducking service. So you're not that hard to find, right? Pardon me? You're not that hard to find. You're not that hard to find, Your Honor. Plaintiff, I mean. And so basically we had a situation where there were other areas of damage, more esoteric. Mrs. Curtis spent about 12, 15 years being a head of three different adoption agencies. And she retired from the agency she worked for, which was a tremendous commitment, and planned on getting another job in a similar agency. With this kind of litigation against her, it was impossible. Any superficial investigation of her would have all these hurtful allegations made over a period of time. And they hindered her opportunity to get another employment as well. So in essence, you're here telling us that we should reverse the trial court because she was incorrect in her belief that the statute required the filing of a lien and that these defendants here filed a lawsuit and a lien on a matter that had already been satisfied and the plaintiff thereby suffered a slander of title? That's correct, Your Honor. Okay. She'd have been right if this action were for foreclosure, right? That would have been a precursor to litigation, filing a lien, right? Actually, they could have. They had several alternatives. They say correctly in their briefs that the association has many remedies available to them, one of which was a foreclosure on the lien. The lien didn't even have to be a written, recorded lien. It could be a lien, I think, as a matter of law. I think the relevant statute allows for, quote, a lien without recording. They could have foreclosed. They could have been wrong and even malicious in that way but not in this way. That's what your position is. Yeah. Okay. All right. Thank you. Thank you. Good morning, Your Honors. May it please the Court, James Davidson again for the appellees, Andrea Reichsecker, Daryl Hubbard, and Sudler and Company. I first want to give a little background as to why these plaintiffs are being sued rather than the association. In the underlying case, the association was sued as well as their managing agent, Sudler and Company, and all of the current, at that time, current members of the Board of Managers. Under the Condominium Property Act and the Forcible Detainer Act, it is the Board of Managers or their managing agent who can maintain a cause of action or record a notice of lien on behalf of the association. So not only was the association sued but these individuals and their managing agent were sued because they are the ones who actually authorize the cause of action. Your Honors, the only issue before us today, based upon what the plaintiff has admitted that's been waived, is whether the judicial or quasi-judicial proceedings immunity applies to the Count III claim for false light for the filing of the notice of lien and slander of title for the filing of the notice of lien. We believe the trial court correctly concluded that there is absolute immunity for that action. One of the reasons for that, Your Honor, is that I want to take the lawsuit, first of all take the fact that the lawsuit was filed even out of play. We tried to convey this in our brief. The action of filing a lien, a notice of lien, under the Illinois Condominium Property Act, that in and of itself is a protected act, regardless of whether a lawsuit for foreclosure is ever filed or any other related lawsuit is ever filed. And the reason being, Your Honor, is... Are you saying it's an absolutely privileged act? It is. And where is the source of your authority? Wouldn't that fly in the face of long-standing precedent in Illinois that you can file a cause of action for the malicious filing of a document that files a title? You could file potentially a cause of action for malicious prosecution or some other cause of action. But Illinois courts, especially Ringier America, have recognized an absolute privilege for the filing of, when it comes to defamation-based claims, which are false light and slander of title. Malavitas recognizes it for false light. And the Ringier America court case, which protected the filing of a lease pendants, was a slander of title. But why does this file when they've paid the money? Your Honor, the motivation is irrelevant. Even Ringier America says that the filing... So you can walk down the street, and if they miss by a month, you can file a lien and shaft them so they can't do anything on their mortgage? Your Honor, I'm certainly not saying that it's... Is this a practice? No, it's not a practice. Your Honor, I think what really happened here, if we want to get into the facts... Now, the gentleman said that he negotiated, I don't know if it was with you, with the law firm. It was not with me. Okay, you're off the hook. Yeah, okay. We're agreed on that much. You're off the hook. But in good faith, can a law firm deal with him, and I'm assuming he's telling what happened, and it's pretty obvious from the facts as I read them that it did occur that way, but they went ahead even after, almost like in retribution. Judge, and for the purposes of this hearing today, and a 615 and a 619 motion, you have to take everything that he said as true, so I agree. And let's assume that what he said is true. I think what really happened is ship's passing in the night. Money comes in, the managing agent went ahead and authorized their law firm to file. But even if they are the victims of a sharp practice, shall we say, what you're saying is that because of the case law and the statutes in the State of Illinois, there's an absolute privilege for the filing of the lien, even though they're incorrect in what they're saying. Absolutely, Your Honor. The Rainier America Court, 1st District, 1996, said the privilege applies even if the statements are made with malice, because public policy favors the free and unhindered flow. That's a different animal. This is just generally talking about the privilege in itself. This is before they even get to the issue where the lease penance was protected. And you'll notice the Wilton Courts in California, in that case you have very similar facts. The association actually lets someone live on the property and do maintenance work and then not have to pay assessment. So you have an agreement. And then they wouldn't file a lien against them for the unpaid assessment. As I used to say when I did criminal cases, this is not California. This is not la-la land. I understand, Your Honor. You know, a southern can convict you. I understand, Your Honor. But I want to point you to a provision in the Condominium Property Act. The quasi-judicial proceedings immunity applies not only to traditional judicial proceedings, such as a complaint. We all agree that the filing of the complaint is protected and the information in the complaint is protected. We've also extended the privileges to quasi-judicial proceedings and actions that are necessarily preliminary to the filing of an action. Section 765 ILCS 605-9H, that provision in the Condominium Property Act states that you must file the notice of a lien before an action to foreclose can be filed. The last sentence of that provision reads, upon the recording of such notice, the lien may be foreclosed by an action brought in the name of the Board of Managers in the same manner as a mortgage for real property. So you can't file an action to foreclose on a condominium assessment lien under the Act without first filing and recording a notice of lien. But that doesn't apply here because that's not what you did. You didn't file an action for foreclosure. You filed an action for possession. Your Honor, the subsequent filing of an action is irrelevant. The reason being is that it's a step necessarily preliminary to litigation, not only to litigation but to protect your rights. Are you saying that the filing of a lien claim is a condition preceding to the filing of an action for possession? No. I'm saying it's a condition precedent for the filing of an action for foreclosure. Which didn't happen here. It did not happen. But it's not necessarily that it actually happened. You file a lien, you record a lien for other reasons. So you're saying it's analogous and we should follow it as a result of that? I'm not saying it's analogous. I'm saying that the case law in Illinois has said that actions that are necessarily preliminary to a judicial proceeding or a quasi-judicial proceeding are absolutely privileged. For example, if you wanted to beef someone. Let's concede that. That's not applicable here. This is not preliminary to the filing of a lawsuit. It's not necessary to file a lien. It's an option. It's an and or scenario. But you don't have to do it in order to file your lawsuit like you do with other types of actions. The lawsuit is already filed. Right. If you look at other provisions of the Condominium Act, the recording of a lien also does more than give you the recording of a notice of lien, which is what was done here. Right. It gives you more protection than simply being able to file a lawsuit. It's priority and perfection. For example, when somebody is $15,000 deep in their assessments, one thing that the association is on high alerts for is a judicial sale, the mortgagee is coming in for closing. By recording their lien and protecting their right, if the bank files, if the bank files, they have a priority position. They have under Section 9-4 of the Condominium Act, they get their entitlement to six months back assessments, but it says six months immediately preceding institution of an action to enforce. The association has to take action. The lien is created by statute, but to protect their rights or to have a subsequent ability to file an action based upon foreclosure, they must take this preliminary step. What I'm saying is, for example, in some states, before you can file an ARDC complaint, you must first write a letter to the board saying I'm going to file this complaint, I want you to investigate. Illinois courts in the Perillo-Weiss case has said that similar actions that are necessarily preliminary to taking other judicial action and protecting your rights are privileged. And here, Your Honor, if you were to say that you must then file a foreclosure action to get the privilege, what you're going to do is you're going to flood courts with unnecessary lawsuits. The filing of the lien itself may give rise to settlement negotiations, may give rise to the ability for the unit owner and the condominium association to work it out. I think it's different here because that's mandatory. You have to do this in order to get to Step 2. That's not the scenario before us. It's not a two-step process. You can do either or, or you can do both, but it's discretionary. So the protection that would be afforded a mandatory act seems reasonable as opposed to somebody who takes it upon himself to take this course of action. You better do so carefully and in a nonmalicious way. Your Honor, I respectfully disagree because this is a required act. To get your priority, to get your position, and to be able to later file an action for ---- It might be required for your priority to put yourself in a better position, but it's not required in terms of the lawsuit that you file. And I think it was proved by the fact that you filed the lawsuit before you filed the lien. Your Honor, I agree that what I'm saying is if we take the lawsuit completely out of it, the filing of the lawsuit out of it, and think about this in a bigger picture, because this is going to have, whatever you decide is going to have implications. So if you say that the filing of a lien under the condominium's, the filing of a notice of lien under the condominium act is not subject to the immunity, you would have to agree that the filing of a judicial action to foreclose that lien is. So what you would then be saying is if you're going to file and record your lien, you better immediately file a lawsuit at the same time for judicial foreclosure of that lien. And that can't be the case. We can't come in and say that condominium associations, managing agents, board of directors, in order to protect yourself. I don't know if we'd be saying that. We might be saying make sure you're owed the money before you file something. Your Honor, that's a different question. It's a different question. This privilege protects malicious acts. If you have one rogue member of the condominium board that runs down and files a lien in the name of the association, the quasi-judicial and judicial proceeding immunity, it goes beyond recklessness and it protects malicious acts. The reason why is the courts have said that this privilege and immunity is so important, it goes beyond protecting the interests of a litigant who may not have a cause of action because of the privilege. You may have situations where people who are honestly and significantly aggrieved have no remedy. And that's recognized in the McGrew case cited in our brief. It talks about the application of this privilege will leave people who are wronged without a remedy. Let me ask you, is the filing of a lien claim in a mechanics lien scenario privileged? It would have to be, Your Honor, because you cannot later foreclose on that lien without first filing a notice of lien. And the mechanics lien situation is even greater because there is issues regarding privilege and priority and position for mechanics liens. So again, it's a great example because the filing of the recording of a notice of mechanics lien would have to be a privilege act under the judicial proceedings immunity because you could not protect your position and you could not later file an action to foreclose. So it's a condition preceding? It's a condition preceding. But how about if I filed an attorney's lien against your property? Could you owe me fees? Is that privileged? Your Honor, I don't know the answer under the attorney's lien act. I don't know if it's a condition precedent, and I don't know that an attorney's lien would necessarily have to be filed against someone's property. I think there may be policy that would say you shouldn't file an attorney's lien against someone's home. But I guess I keep coming back to you saying that this lien is necessarily preliminary to the filing of the lawsuit. As Justice Lavin points out, that's not true based on the timing of your filing, obviously, and it's not the law. It's not stated in the law. It's not stated in the statute. There's no case law to support that as it relates to a suit for possession as opposed to foreclosure. Your Honor, that's why I'm saying that in some respects, I personally believe that the filing of the forcible lawsuit is important and it is relevant because we're going to agree that the filing of the forcible, it contains the exact same information as the lien. It was prepared at the same time, but that's not privileged. The information is available to the public in both sectors. And I think that under a read of Rainier, it's certainly an associated act because the Forcible Entry and Detainer Act and the Condominium Property Act give two courses of action to a condominium association to protect their rights. They can immediately file a forcible act and they can pursue their lien rights. And the cases we've cited in our brief from both the Illinois Supreme Court and this court in 2010 don't say you have to choose one or the other. So these actions were associated to get to the same end result, get that $15,000 back that they say they were owed. Now, they may not have been owed it, but that was the purpose of these actions. Again, I do have to disagree. The legislature has defined the recording of a notice of lien as a conditioned precedent to filing a lawsuit to foreclose on that lien. You must do it first. So say this happens. On January 1st, I record my notice of lien. On behalf of an association, I call the putative plaintiff and say, you owe us $15,000. Please pay. Okay, let's work it out. Let's do that. We won't file a lawsuit against you while we're trying to work it out, or we won't file a lawsuit unless the bank comes in. We're just protecting our rights. And then the plaintiff walks over and says, I only owe you $10,000, so I'm going to file an action for slander of title against you because you never filed that subsequent action which you're entitled to file. I get it, though. This is circular, what we're doing here. I get the fact that that's mandatory. You could never file your claim for foreclosure, your lawsuit for the foreclosure, if you didn't file the lien first. So I get where that would be a privileged action because it's a requirement in the law to do that. That's not the case here. When you're filing an action for possession, there's no requirement that it be preceded by the filing of a lien. It's discretionary. So when you take a discretionary action, you must do so carefully and with due diligence, don't you think? Your Honor, again, the action for possession, I'm taking the situation out of the facts of this case because I think we have to when we make these decisions, that the filing of the notice of lien under the Condiment and Property Act is a conditioned precedent to later file an action to foreclose on it. And in the meantime, others could come in and potentially take priority. What they're doing is they're taking a judicial action or a quasi-judicial action or an action necessarily. That's another issue. You say in your brief that the filing of the lien is in and of itself a quasi-judicial act. Your Honor, that's a misstated heading in my brief. What I'm saying is what we're trying to get across is actually the first paragraph of that section of the brief. It's the recording of the notice of lien in and of itself is a protected act under the quasi-judicial and judicial proceedings immunity because the legislature has defined it as a mandatory step to later foreclose on that lien or to protect your interests in priority and perfection should a lawsuit be filed. I mean, we also draw the distinction that what's interesting is if the association would have filed a lease pendants. We would all have to agree that would be privileged. The filing of a lease pendants is putting a document in the chain of title that gives a buyer, a bank, knowledge that there's a fight going on on this unit regarding who owns it, how much money is owed, do they have clean title. It has the same effect as a notice of lien. In that case, the suit's already been filed. And a notice of lien, you could run around filing liens against everybody's property for whatever reason you deem appropriate and have complete immunity if we're going to apply your opinion. Your Honor, I completely agree. I think there's a very big distinction between a lease pendants and a recording of a notice of lien. I think that a lease pendants, there must be a lawsuit that's on file. And I think that the Rainier Court, the reading of that opinion would support that conclusion. I mean, there could be arguments of both sides. But I think the Rainier Court is actually saying that a lease pendants is protected as long as there's a lawsuit affecting property interests on file. But the notice of lien is different because it's defined by statute as an act that is necessary before you can file a forcible action, or necessary before you can file an action to foreclose, and it's necessary to protect your priority and interest in the property. Yeah, but that's different. That's very different than what you did here. Necessary to protect your interest, sure, and if you deem that appropriate to do in your discretion, you should do it. But the law does not require it like it does with a foreclosure action. The law says you can't file this foreclosure action until you take this step and file your notice of lien claim. Right? Exactly. So you're out. But it doesn't say that with possession claims. It doesn't say that. So you kind of proceed at your own peril some way. You've got to do so carefully, and you could even do so negligently, but you can't do it maliciously because you're not going to be protected. I think the Perlow and Weiss case that's been cited in our brief talks about actions that are necessarily preliminary to a judicial or quasi-judicial proceeding. They send a letter to the – in that case what happened is the then-president of the Illinois State Bar Association said, this law firm has 4,000 suits pending out there, and they're churning lawsuits, and they have an interest in keeping lawsuits on file. They write a letter to the Department of, I believe it's insurance, and say, you know, we've got to look into this because they represented Safeway Insurance. We have to look into this. And before the Department of Insurance can take any action, that letter has to be written. It wasn't necessary that a lawsuit was later filed or that the Department of Insurance later took action. That necessarily preliminary step in and of itself was protected. And that's what we're saying here. It's irrelevant if an action to foreclose is actually filed after the notice of lien is recorded because the way this usually works is it's not the association that files the action to foreclose. It's the lender. And the association gets its lien on file so that when that action is filed by the lender, their position is protected, and they're insured of getting their six months. That's why they take this act. And so when a lawsuit is filed, either by them or by the lender, they've taken that necessarily preliminary step that protects their rights in court. And that's the distinction. It's irrelevant that it's later filed. And I really want to point to the Wilton case. I know you say we don't follow California, but in this situation you should because the privileges are the exact same. Read the nature of the privileges discussed in Wilton and read our case law that discusses our privilege. They're the exact same. They both come from Section 587 of the Restatement of Torts. In Wilton they talk about a two-pronged approach. The association doesn't have to later file an action to record their lien. They can file an action after they record their lien. They can go through the judicial sale process, and an action never has to be filed. The court points out there that if you say that every time that you record a lien, you have to file a lawsuit to get the protection, all it's going to do is lead to more lawsuits. The association has to be, forget the facts of this case where they may have messed up, but think about it in the broader picture where maybe they put a one instead of a zero where there's an extra zero by a scrivener's error. The association has to have that protection to know that when they enforce their statutory rights, they're a necessary primary to an action, that they're not going to be sued unless they go out and first sue the property owner. They do if they're acting in good faith. This only applies, these slander of title can only apply in a malicious context. I know we're speaking a little bit in circles, but that's the point of the privilege. A lot in circles. That's the point of the privilege. That's the point of the privilege. I just don't want to get into Del Boca Vista here and pull out a Seinfeld reference, but we'll save that for the opinion. But I think if you compare what happened in Wilton to what happened here, the nature of our privileges. Explain again what you're saying, that if we reverse, we're going to open some kind of floodgate because there's a concern on the other side that if we affirm what the trial court does, that we would sort of give license, we'd give license to, you know, wacky, malicious lien filers. I can't say it any better than the California court did in Wilton. They said, we further conclude that the litigation privilege attaches to the publication of an assessment lien, even if the homeowner's association has not decided at that point the lien is filed, that it will pursue a judicial foreclosure, and even if the lien is ultimately enforced by a private sale. To conclude otherwise would make the privilege hinge upon factual inquiries in which remedy associations intended to use and might need associations to resort to judicial foreclosures in every case simply to avoid the risk of tort liability. And that's what we're saying here. If we're going to file a, take our rights under the statute to record a notice of lien to protect ourselves in the event of a future lawsuit, that we might as well start filing judicial foreclosures. Because if not, we run the risk of putting a zero where an eight should have been. Or putting an extra one. However, there should be another step in there. Maybe there should. That would be a question for the legislature. A valid one and a malicious one. You would have to reverse Ringier and reverse the long-standing precedent since 1870 that says that even malicious acts are protected by the absolute privilege. What about the protections afforded people who are wronged by the malicious filing of documents that have been recognized since 1973 that you can file a slander of title claim if it's a malicious filing? We erode that, don't we? Your Honor, Ringier. That's a different case. That's a Liz Pendens case. Right. But what the Court said there is in Ringier, they think that the action was malicious. The filing of Liz Pendens and the filing of the lawsuit themselves were malicious. And the Court says it doesn't matter. If the privilege applies, it doesn't matter if it was a scrivener's error or if somebody really didn't like the plaintiff and wanted to put them through something. So the question of maliciousness, it's irrelevant to whether the privilege applies or not. There are other ways, other causes of action. There are breach of fiduciary duty causes of action against associations and against their board of managers. If the case fits, there's abuse of process. There's malicious prosecution. Defamation-based claims, which include false light and slander of title, have been long given this protection. And we as lawyers should be happy about it because when we file lawsuits and if they contain inaccurate information to no fault of our own, we're protected by the same privilege. See, and that was one of my statements earlier, not to you but to them. We don't talk about those private things. You would concede that there are multiple jurisdictions that hold just the opposite of the way the California court did. Your Honor, I don't know. I really don't. I assume you're right, but I'm not going to say for sure that I can't concede the point because I don't know. I do know that – You're talking to California? No, I said other states. You can't blame a guy for finding a good case. I stopped. I stopped. But you notice in our briefs we did file – we did cite cases from many jurisdictions, but they were mechanics liens. The only homeowners association lien or condo association case that I found and, in all fairness, I asked my associate to find cases that helped. So I can't say that it is a case I know that hurts. It certainly wasn't cited by the plaintiff. All right. Well, you've helped yourself enough here today, so why don't you wrap up? For the reasons stated today on the record and for the reasons stated in our brief, we ask that you affirm the trial court's January 24, 2011, order dismissing all counts with prejudice. Thank you. Even though you cited that one case. The robe gives you the last word. I can't, you know. Retire? Retire. Going through the brief of counsel, I can't find anywhere in the brief – it does say that the client had many options to pursue to collect their money if it's owed to them. But nowhere did I see in the brief that it's a requirement for foreclosure that they go through this process first. And I could be misreading it, but it's page 8 of his brief. But that's about it. Okay. Well, I think we're in good shape here with the briefs and the arguments. Great job on both sides. You're both to be complimented. Thank you very much. Seriously. Thank you very much. We'll take it under advisement. And we're adjourned.